UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KALIEF WILLIAMS,

                               **Case No.:** 1:21-cv-2922 (EK) (CLP)

                      Plaintiff,

       -against-

THE RUSSO'S PAYROLL GROUP, INC. d/b/a
RUSSO'S ON THE BAY, FRANK RUSSO, JR.,
ROBERT "ROBBIE" RUSSO, and GIUSEPPE
"JOE" VACCA,

                    Defendants.
-----------------------------------------------------------------X

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTION TO DISMISS AND TO STRIKE ALLEGATIONS FROM THE COMPLAINT

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Defendants*
*The Russo's Payroll Group, Inc.*
*Frank Russo, Jr., and*
*Giuseppe Vacca*

Date of Service: October 15, 2021

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STANDARD OF REVIEW ....................................................................................2

FACTS ..............................................................................................................4

    I. THE COMPLAINT ...................................................................................4

    II. ALLEGATIONS DIRECTLY PERTINENT TO WILLIAMS .................................4

    III. ALLEGATIONS WHICH ARE NOT DIRECTLY RELEVANT
    TO WILLIAMS .............................................................................................7

    IV. PRIOR COMPLAINTS WITH NYCCHR AND EEOC ...........................................8

ARGUMENT ....................................................................................................8

    THE COMPLAINT MUST BE DISMISSED ON STATUTE
    OF LIMITATIONS GROUNDS ......................................................................8

    THE COMPLAINT FAILS TO STATE A CLAIM FOR
    RELIEF IN ANY EVENT ...............................................................................15

        I. TITLE VII STANDARD FOR PLEADING .......................................................15

        II. PLAINTIFF'S DECISION TO RESIGN DOES NOT CONSTITUTE AN
        ADVERSE EMPLOYMENT ACTION ...............................................................16

        III. DEFENDANTS' OTHER ALLEGED ACTIONS ARE INSUFFICIENT
        & IMMATERIAL TO CONSTITUTE ADVERSE EMPLOYMENT
        ACTIONS ..................................................................................................18

        IV. REFERENCES TO THE PLAINTIFF BY THE N-WORD DO NOT
        CONSTITUTE A HOSTILE WORK ENVIRONMENT ...................................19

    SCANDALOUS, IMPERTINENT, AND IMMATERIAL ALLEGATIONS
    MUST BE STRICKEN ..................................................................................20

CONCLUSION ...............................................................................................22

# TABLE OF AUTHORITIES

**Cases**

Alfano v. Costello,
    294 F.3d 365 (2d Cir. 2002)..................................................................................... 14, 19

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...................................................................................................... 3

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................................... 3

Bennett v. Health Mgmt. Sys., Inc.,
    936 N.Y.S. 2d 112 (1st Dept. 2011) ........................................................................... 17

Bishop v. Henry Modell & Co.,
    No. 08-CIV.-7541 (NRB), 2009 WL 3762119 (S.D.N.Y. Nov. 10, 2009)..................... 11

Bishop v Henry Modell & Co., Inc.,
    422 Fed. Appx. 3 (2d Cir. 2011) ................................................................................. 11

Carter v. Cornell Univ.,
    976 F. Supp. 224 (S.D.N.Y.1997) ............................................................................... 20

Chase Grp. All. LLC v. City of New York Dep't of Fin.,
    620 F.3d 146 (2d Cir. 2010)......................................................................................... 2

Davis-Garett v. Urban Outfitters, Inc.,
    921 F.3d 30 (2d Cir. 2019)......................................................................................... 13

DiFolco v MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)......................................................................................... 3

Employers Ins. of Wausau v. Musick. Peeler, & Garrett,
    871 F. Supp. 381 (S.D. Cal. 1994)............................................................................... 21

Farrugia v N. Shore Univ. Hosp.,
    13 Misc. 3d 740 (Sup. Ct. N.Y. Cty. 2006) ................................................................. 12

Faulkner v. Beer,
    463 F.3d 130 (2d Cir. 2006)......................................................................................... 3

Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,
    402 F. Supp. 636 (S.D.N.Y. 1975) .............................................................................. 21

Gaffney v. City of New York,
      101 A.D. 3d 410 (1st Dept. 2012) ...................................................................... 15

Gonzalez v. N.Y.C. Health & Hosp. Corp.,
      No. 19 Civ. 2645 (JPO), 2019 WL 2435622 (S.D.N.Y. June 11, 2019) .................. 14 n. 8

Henderson v. Town of Van Buren,
      15 A.D.3d 980 (4th Dept. 2005) ............................................................... 10, 13

Hill v. Cray Research, Inc.,
      864 F. Supp. 1070 (D.N.M. 1991) ................................................................ 21

Hill v. Rayboy-Brauestein,
      467 F. Supp. 2d 336 (S.D.N.Y. 2006) .......................................................... 20

Hughes v. Twenty-First Century Fox, Inc.,
      304 F. Supp. 3d 429 (S.D.N.Y. 2018) .......................................................... 20

Isaacson v. N.Y. Organ Donor Network,
      No. 08-CIV.-9545 (RMB) (THK), 2009 WL 9119999 (S.D.N.Y. Dec. 30, 2009) .......... 11

Jackson v. City of New York,
      No. 10-CIV.-7889 (RMB), 2013 WL 541510 (S.D.N.Y. Feb. 14, 2013)........................ 12

La Porta v. Alacra, Inc.,
      142 A.D. 3d 851 (1st Dept. 2016) .................................................................. 14

Legg v. Eastman Kodak Co.,
      248 A.D.2d 936 (4th Dept. 1998) ........................................................... 10 n. 5

Martin v. Citibank, N.A.,
      762 F.2d 212 (2d Cir. 1985)......................................................................... 17

McLeod v. Jewish Guild for the Blind,
      864 F.3d 154 (2d Cir. 2017)................................................................... 13 n. 7

Menaker v. Hofstra Univ.,
      935 F.3d 20 (2d Cir. 2019)......................................................................... 15

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
      715 F.3d 102 (2d Cir. 2013)................................................................. 18 n. 10

Moodie v. Fed. Reserve Bank of N.Y.,
      58 F.3d 879 (2d Cir. 1995)................................................................. 12, 12 n. 7

Morales v. City of New York Dep't of Justice,
        No. 10-CIV.-829 (JGK), 2012 WL 180879 (S.D.N.Y. Jan. 23, 2012) ..................... 11 n. 4

Nault's Auto. Sales v. Am. Honda Motor Co.,
        148 F.R.D. 25 (D.N.H. 1993) ...................................................................................... 21

Oshinsky v. New York City,
        No. 98-CIV.-5467(AGS), 2001 WL 417686 (S.D.N.Y. Apr. 24, 2001) ........................ 12

Perry v. Ethan Allen, Inc.,
        115 F.3d 143 (2d Cir. 1997)......................................................................................... 19

Petrosino v. Bell Atl.,
        385 F.3d 210, 230 (2d Cir. 2004)................................................................................. 17

Quinones v. New York City,
        No. 19-CIV.-5400 (DF), 2020 WL 5665142 (S.D.N.Y. Aug. 17, 2020)......................... 11

Quinones v. New York City,
        No. 19-CIV.-5400 (LJL), 2020 WL 6901340 (S.D.N.Y.  Nov. 23, 2020) ..................... 11

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
        743 F.3d 11 (2d Cir. 2014)........................................................................................... 19

Rowe v. Jagdamba, Inc.,
        302 Fed. Appx. 59 (2d Cir. 2008)................................................................................. 18

Schwapp v. Town of Avon,
        118 F.3d 106 (2d Cir. 1997)......................................................................................... 19

Short v. Deutsche Bank Sec., Inc.,
        913 N.Y.S. 2d 64 (1st Dept. 2010) .............................................................................. 14

Shukla v. Deloitte Consulting LLP,
        No. 19 Civ 10578, 2020 WL 3181785 (S.D.N.Y. June 15, 2020)................................. 18

Spence v. Maryland Cas. Co.,
        995 F.2d 1147 (2d Cir. 1993)............................................................................ 15, 16, 17

Sprott v. N.Y. City Hous. Auth.,
        No. 94-CIV.-3818 (PKL), 1999 WL 1206678 (S.D.N.Y. Dec. 16, 1999)................. 10, 13

Stembridge v. City of New York,
        88 F. Supp. 2d 276 (S.D.N.Y. 2000)............................................................................ 20

Strusman v. NYU Langone Hosps.,
    No. 19-CIV.-9450 (LJL), 2020 WL 3415111 (S.D.N.Y. June 22, 2020)............ 11, 11 n. 5

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003)....................................................................................... 14

The Wilderness Soc'y v. Kane County, Utah,
    581 F.3d 1198 (10th Cir. 2009) ................................................................................... 21

Tulino v. Ali,
    No. 15-CIV.-7106, 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019) .................................. 14

United States v. Dauray,
    215 F.3d 257 (2d Cir. 2000)................................................................................. 12 n. 6

United States Sec. and Exch. Commn. v Collector's Coffee Inc.,
    No. 19-CIV.-4355 (GWG), 2021 WL 1956369 (S.D.N.Y. May 17, 2021)..................... 22

United States Sec. and Exch. Commn. v Collector's Coffee Inc.,
    19-CIV.-4355 (VM), 2021 WL 3082209 (S.D.N.Y. July 21, 2021) .............................. 22

Van Zant v. KLM Royal Dutch Airlines,
    80 F.3d 708 (2d Cir. 1996)....................................................................................... 11

Varone v. City of New York,
    No. 02-CIV.-1089 (DFE), 2003 WL 21787475 (S.D.N.Y. Aug. 4, 2003) ...................... 12

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)................................................................................. 13, 14

Whidbee v. Garzarelli Food Spec., Inc.,
    223 F.3d 62 (2nd Cir. 2000)....................................................................................... 16

Williams v. N.Y.C. Hous. Auth.,
    872 N.Y.S. 2d 27 (2009) ................................................................................... 18 n. 10

Woodcock v. Montefiore Med. Ctr. Univ. Hosp.,
    No. 98-CIV.-4420, 2002 WL 403601 (E.D.N.Y. Jan 28, 2002)................................... 17

Ysais v. N.M. Judicial Standard Comm'n,
    616 F. Supp. 2d 1176 (D.N.M. 2009) ........................................................................ 21

**Rules**

Fed. R. Civ. P. 12............................................................................................... 2, 3, 22

**Statutes**

12 NYCRR § 146-2.14 ............................................................................................................... 19

New York City Administrative Code § 8-113 ......................................................................... 10

New York City Administrative Code § 8-502 ....................................................................... 9, 12

New York Civil Practice Law & Rules § 214 .......................................................................... 11

New York Executive Law § 296 ............................................................................................... 11

New York Executive Law § 297 ............................................................................................ 9, 10

## PRELIMINARY STATEMENT

The events alleged in the Complaint filed on May 24, 2021 fall outside the statute of limitations and must be dismissed as untimely. In this case, Plaintiff Kalief Williams ("Plaintiff") complains of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL") arising out of his employment at Russo's on the Bay ("Russo's"), which transpired on or before September 2016, approximately five (5) years ago – well beyond the three (3) year statute of limitations periods for Plaintiff's NYCHRL claims.

In filing the instant complaint, Plaintiff relies on the tolling provisions afforded by New York City Administrative Code ("Admin. Code") based on his timely filing of a complaint with the New York City Commission on Human Rights ("NYCCHR") in November 2016. While, generally speaking, the filing of an administrative complaint will toll the statute of limitations on a discrimination claim, the administrative complaint here was dismissed for administrative convenience which statutorily results in an annulment of a complainant's election of remedies.

Indeed, the NYCHRL provides that such an election constitutes an annulment of the charge such that it was never filed, and the statute of limitations is not tolled. As such, there is no tolling for the period in which the claim was pending in the administrative process, and the statute of limitations in this case is measured from the alleged occurrence of discrimination. Plaintiff's Title VII claim must also suffer the same fate, as the original complaint was annulled, and it is too late to file a charge of discrimination with United States Equal Employment Opportunity Commission ("EEOC") now.

The complaint must therefore be dismissed as untimely.

Even were this Court to find that Plaintiff's claims are not time barred (which they are), the complaint must nevertheless be dismissed for failure to state a claim upon which relief can be granted as Plaintiff fails to make out a *prima facie* case of discrimination. While Plaintiff is a member of a protected class, there are no allegations that he suffered any adverse employment action such as his claim of constructive discharge or lost tips, and there can be no inference of a causal link between Plaintiff's race and his separation from employment.

Perhaps worst of all, Plaintiff's complaint contains scandalous and defamatory allegations against Defendants which are beyond the pale and have no bearing whatsoever concerning his claims. Among those allegations are: (i) Plaintiff was chased by a group of ten (10) white boys with knives and sticks when he was sixteen (16) years old near a Chinese restaurant in Howard Beach; (ii) Howard Beach, Queens is stained with a history of hate crimes, including the murder of an African American man in 1985 and the attack of three African-American men in 2005; (iii) Defendants have close ties to the New York City Police Department and are connected to organized crime; (iv) Russo's held Trump rallies; and (v) Plaintiff would frequently be stopped by the police during his walk to work at Russo's. None of the foregoing allegations have anything to do with the Defendants. What is so repugnant is that Plaintiff claims to be the victim of racial discrimination, yet cavalierly makes unfounded derogatory comments about Italian-Americans and carelessly implies Defendants are somehow connected to the alleged geographic sins of the past. This Court must strike these scandalous, impertinent, and immaterial allegations.

## **STANDARD OF REVIEW**

In deciding a motion to dismiss under Rule 12(b)(6), courts accept as true all well-pleaded factual allegations and draw all inferences in the plaintiff's favor. See Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In this motion, Defendants introduce Plaintiff's verified complaint filed with the NYCCHR and related documents dismissing the complaint to establish that Plaintiff's claims are untimely. These documents are referenced or relied upon in the complaint to establish that Plaintiff has exhausted administrative remedies.  A court can consider documents that are "integral to" the complaint. In order for a document to meet this exception to the general principle that a court may not consider documents outside of the pleadings without converting the motion to one for summary judgment, the complaint must rely heavily upon its terms and effects. See DiFolco v MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, thereby rendering the document integral to the complaint.") (internal quotation marks and citation omitted).

"However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (internal quotation marks omitted) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id.

## FACTS

i.    The Complaint

On May 24, 2021, Plaintiff filed a complaint against the Defendants.  See Docket Entry 1 ("Compl."). The complaint generally alleges that Williams "experienced a racially stratified and discriminatory workplace" where "management casually and continuously used racial slurs and racial stereotypes," and where everyone – "staff, … guests …, and local residents" – engaged in "racial mistreatment" and same was "commonplace."  Id.  Plaintiff also alleges that Robert Russo ("Robert") violently attacked him and that he was denied a request to not work alongside him following the alleged incident.  Id. at 1.  Williams identifies as a "Black" man who has been employed by Russo's in May 2015.  See Compl. ¶ 1.

ii.    Allegations Directly Pertinent to Williams

In May 2015, Williams was hired to work as a server together with his brother Kajeen Lucas at Russo's and its sister restaurant Vetro Restaurant and Wine Bar ("Vetro").  See Id. ¶ 12.[1]

Williams alleges that employees, especially managers, used the "n" word constantly and in front of staff and sometimes even guests.  Id. at ¶ 20.  Specifically, Giuseppe Vacca ("Vacca") called Williams the "n" word multiple times a week, including in front of others, and that Vacca would not stop when asked by Williams to do so.  Id. at ¶¶ 21-24.  Williams claims that Vacca said to another supervisor that he "[doesn't] like that fucking nigger" and did not receive his full share of the tip money that day.  Id. at ¶ 23.  Williams alleges that he complained directly to Frank Russo, Jr. ("Frank"), who is also Robert's father, and that Frank said he would speak to Vacca, but nothing changed and he did not stop.  Id. at ¶¶ 5, 26.

---

[1] Despite alleging that Plaintiff worked at two (2) separate restaurants in two (2) separate locations, Plaintiff fails to identify where each alleged incident occurred.

Williams alleges further that he "was often the first to be sent home if there were too many employees booked for a party, even though he arrived at the event before the white employees who were not asked to leave," and that he complained about this to Jaclyn Ceparano ("Ceparano"), a Human Resources employee, without alleging whether anything occurred as a result of the complaint.  Id. at ¶ 19.

On September 4, 2016, Williams alleges that he was working at a party[2] with Robert supervising.  Id. at ¶ 32.  Robert allegedly yelled and cursed at the entire crew to finish up.  Id. When Williams assured Robert the crew was on schedule, Robert screamed directly at Williams, called him a "lazy fucker," and called him the "n" word several times.  Id. at ¶ 33.  When Frank intervened to ask him to stop, Robert continued calling Williams the "n" word and threw his walkie-talkie down, shattering it.  Id. at ¶ 34.

When Frank left, Robert chased Williams down and began engaging him in a physical altercation, but Williams refused to so engage; Robert followed Williams and allegedly said "I should break your jaw, I should punch you in the face" and hollering at Williams, "I should fuck you up."  Id. at ¶¶ 34-38.  Robert allegedly continued to menace Williams until he called a taxi and hid in a locker where he would not be expected to hide.  Id. at ¶ 38-41.

Williams alleges that he complained to Ceparano about this incident two (2) days later on September 6, 2016, who was entirely unaware of the incident despite the fact that Frank, Robert, and another employee allegedly had an obligation to report it to her.  Id. at ¶¶ 46-47.  Ceparano then allegedly stated that Robert was not supposed to be working for the Corporate Defendant and that Williams should file a police report because then it would be "out of their hands."  Id. at ¶ 48.

---

[2] Plaintiff presumably refers to an event at Russo's – not Vetro – as he references a ballroom.

Williams alleges that he met with Philip Montante ("Montante"), a general manager, two (2) days later on September 8, 2016, who interviewed Williams concerning what transpired. <u>Id.</u> at ¶¶ 48-49. Montante allegedly told Williams that "kids make mistakes and kids are gonna be kids." <u>Id.</u> at ¶ 50. Montante also stated that Robert was suspended as a result of his incident. <u>Id.</u> at ¶ 51.

Williams was not pleased with Robert's punishment and the lack of assurance that he would not be required to work with Robert in the future. <u>Id.</u> As a result, Williams spoke to Frank about the issue, and nothing allegedly came of that. <u>Id.</u> at ¶¶ 52-53. Williams claims that no witnesses were interviewed, no investigation or findings were documents, no measures were instituted to address and condemn racial discrimination, no apologies were made, and no video tapes were preserved. <u>Id.</u> at ¶ 54.

Plaintiff returned to work a few days after this incident and worked without incident until late September 2016 when he decided on his own to resign from his position. Williams alleges that he was constructively discharged because of Russo's failure to guarantee his safety and rectify the hostile work environment there. <u>Id.</u> at ¶¶ 55-56.

Plaintiff also claims, without specifying when, that Robert was placed back to work in the very same role supervising black workers, despite the allegation that Robert was traveling in Europe following his suspension. <u>Id.</u> at ¶ 57.[3] The complaint does not allege when Robert returned to Russo's or that he worked with the Plaintiff again after the September 4, 2016 incident.

---

[3] Although this Court must accept the allegations as true for purposes of this motion, Defendants respectfully submit that discovery will show Robert's suspension was converted to a termination shortly after the September 4, 2016 incident with Plaintiff. Discovery will also show that Robert did not return to work at Russo's at any point prior to Plaintiff's voluntary resignation from Russo's and Vetro. In fact, Robert only returned as a new hire in May 2018, nearly two (2) years later.

### iii.    Allegations Which Are Not Directly Relevant to Williams

Plaintiff alleges that black employees are employed in entry-level positions while management and higher-paying roles were primarily occupied by whites and light-skinned Latinos, and that there were no black managers, captains, or maître d's, where "pathways for growth were deliberately opaque." Id. at ¶¶ 13-15.  He further identifies three (3) individuals – Jemoy Bailey, Delvian Flemmings, and Ashley Joseph – who were passed over for promotion despite the fact they were "all seasoned, hard-working Black employees." Id. at ¶ 17.

Williams alleges that managerial staff refer to black women as "ratchet," which he claims is a derogatory racial term that is defined as a "diva, from urban cities and ghettos" and "nasty, ghetto, or trifling." Id. ¶ at 27.  He also complains that the Individual Defendants made comments about women's bodies that were disgusting and degrading and talk about women who they wanted "to bang." Id. at ¶ 28.

Williams alleges that in August 2016, a manager referred to a Muslim event at Russo's as "ISIS training." Id. at ¶ 30.  He also alleges that guests would play Trump rallies on television screens and would cheer when Trump promised to ban Muslims and get rid of Mexicans. Id. at ¶ 31.  Williams further alleges that he was chased by a group of ten white boys with knives and sticks when he was sixteen (16) years old near a Chinese restaurant in Howard Beach. Id. at ¶ 42. He further alleges that Howard Beach, Queens is stained with a history of hate crimes, including the murder of an African-American man in 1985 and the attack of three African-American men in 2005. Id. at ¶ 43.  Williams also alleges that the Defendants have close ties to the New York City Police Department and are connected to organized crime, citing a news article. Id. at ¶¶ 44, 44 n. 2.  Williams alleges he would frequently be stopped by the police during his walk to work at Russo's. Id. at ¶ 45.

iv.    Prior Complaints with NYCCHR and EEOC

On or about November 3, 2016, Williams filed a Verified Complaint with the NYCCHR solely against Russo's, Robert, and Vacca for violations of the NYCHRL and Title VII. See Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl.") ¶ 3, Ex. A.

On or about May 2020, a probable cause determination was issued without describing any basis therefor, and a notice of closure was filed on January 14, 2021. See Kataev Decl. ¶¶ 4-5, Exs. B & C. The notice of closure was issued pursuant to Admin. Code § 8-113(a)(5), which provides that the NYCCHR may dismiss a complaint for administrative convenience at any time prior to the taking of testimony at a hearing because prosecution of the complaint will not serve the public interest. A notice of right to sue was issued by the EEOC on March 9, 2021 because "Charging Party [i.e., Plaintiff] wishes to pursue matter in Federal District Court." Id. ¶ 6, Ex. D.

## ARGUMENT

### THE COMPLAINT MUST BE DISMISSED ON STATUTE OF LIMITATIONS GROUNDS

Plaintiff's claims are barred by the statute of limitations because more than three (3) years have passed since the last alleged discriminatory incidents occurred in September 2016.

While Plaintiff initially filed a complaint with the NYCCHR in 2016, he voluntarily dismissed his complaint, annulled his election of remedies in January 2021, and thereby lost the benefit of any tolling before the NYCCHR.

Generally, a plaintiff may elect to file a lawsuit in court, or file a complaint with the NYCCHR, or the New York State Division of Human Rights ("NYSDHR"). Once a plaintiff elects his remedy to go to the NYCCHR or the NYSDHR, he is barred from seeking relief in court.

After an administrative complaint is filed, the NYCHRL allows an individual to seek relief in court only if the election of remedies is annulled, in which case the plaintiff loses the benefit of any tolling of the statute of limitations in effect during the time which the complaint was pending with the NYCCHR or the NYSDHR.

The New York City Administrative Code provides, in pertinent part, that:

> Notwithstanding any inconsistent provision of subdivision a of this section, where a complaint filed with *the city commission on human rights or the state division on human rights* is dismissed by *the city commission on human rights* pursuant to subdivisions a, b or c of section 8-113, or by *the state division of human rights* pursuant to subdivision 9 of section 297 of the executive law *either for administrative convenience* or on the grounds that such person's election of an administrative remedy is annulled, an aggrieved person shall maintain all rights to commence a civil action pursuant to this chapter **as if no such complaint had been filed.**

See Admin. Code § 8-502(b) (emphasis added).  In other words, when a complainant annuls his election to the administrative process at the City's Commission of Human Rights prior to a hearing and then proceeds to court, any judicial proceedings are subject to New York's general three (3) year statute of limitations, measured from the occurrence of the discrimination, with no tolling for the period in which the claim was pending in the administrative process.

Although there are no reported cases specifically addressing the effect of dismissal for administrative convenience on a complaint before the NYCCHR, the plain language of the statute makes it clear that a plaintiff loses the benefit of any tolling provision by annulling his election of remedies.

However, as set forth below, an analogous statute exists concerning complaints filed with the NYSDHR, and courts have ruled that no tolling applies to cases dismissed for administrative convenience there.

The statutes concerning administrative dismissals under the NYSHRL and NYCHRL are sufficiently similar such that this Court should apply the same reasoning here. See Sprott v. N.Y. City Hous. Auth., No. 94-CIV.-3818 (PKL), 1999 WL 1206678, at *3. (S.D.N.Y. Dec. 16, 1999) (dismissing NYSHRL claims as untimely following annulment of election of remedies with the NYSDHR). Indeed, the New York State Human Rights Law ("NYSHRL") provides:

> Any person … shall have a cause of action in … court, …, unless such person had filed a complaint … with [the NYCCHR], or with the [NYSDHR], provided that, where the [NYSDHR] has dismissed such complaint on the grounds of administrative convenience, … untimeliness, or … that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the [NYSDHR]. At any time prior to a hearing …, a [complainant] may request that the [NYSDHR] dismiss the complaint and annul his or her election of remedies so that the … claim may be pursued in court, and the [NYSDHR] may, upon such request, dismiss the complaint … if a complaint is so annulled by the [NYSDHR] upon … request …, such party's rights to [proceed to] court … shall be limited by the statute of limitations in effect … at the time the complaint was initially filed with the [NYSDHR]. …

See New York Executive Law § 297(9).

Courts applying this law have held that where a claimant annuls his election of remedies by seeking a dismissal for administrative convenience, the statute of limitations on his claims is no longer tolled. See Henderson v. Town of Van Buren, 15 A.D.3d 980 (4th Dept. 2005) ("Plaintiff requested in effect that SDHR "dismiss the complaint[s] and annul ... her election of remedies so that the human rights law claim[s] may be pursued in court" … Under those circumstances, *the statute of limitations was not tolled during the pendency of the complaints filed with SDHR …, and the action was therefore untimely commenced*") (emphasis added). The annulment operates as if no complaint was ever filed with the NYCCHR in the first place. Here, Plaintiff alleges he was subject to discrimination from May 2015 through September 2016, but filed the instant complaint on May 24, 2021, more than three (3) years after the date of alleged discrimination.

Because the tolling period evaporated and the statute of limitations is measured from the occurrence of discrimination, alleged here to be no later than September 2016 (more than three (3) years ago), Plaintiff's NYCHRL are time-barred.   There are numerous cases wherein courts dismiss an annulled NYSDHR complaint based on the statute of limitations.

Plaintiff should also suffer the same outcome on his Title VII claim as he never independently filed an EEOC charge and merely piggybacked his federal claims onto his Verified Complaint with the NYCCHR.[4]  Indeed, by virtue of a work-sharing agreement between the EEOC and the ("NYCCHR"), "a filing with the NYC CHR constitutes a 'dual-filing' with the EEOC." See Quinones v. New York City, No. 19-CIV.-5400 (DF), 2020 WL 5665142, at *4 n. 7 (S.D.N.Y. Aug. 17, 2020), report and recommendation adopted, No. 19-CIV.-5400 (LJL), 2020 WL 6901340 (S.D.N.Y.   Nov. 23, 2020) (citing Isaacson v. N.Y. Organ Donor Network, No. 08-CIV.-9545 (RMB) (THK), 2009 WL 9119999, at *2 n. 2 (S.D.N.Y. Dec. 30, 2009)).

It is anticipated, based on Plaintiff's arguments in opposition to Defendants' letter motion for a pre-motion conference, that he will rely upon Strusman v. NYU Langone Hosps. to oppose the relief sought by Defendants.  See No. 19-CIV.-9450 (LJL), 2020 WL 3415111, at *4 (S.D.N.Y. June 22, 2020).[5]

However, Defendants respectfully submit that the Strusman holding is flawed.

_____

[4] See Morales v. City of New York Dep't of Justice, No. 10-CIV.-829 (JGK), 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012) (holding that complaints filed with another agency are considered to be cross-filed with the EEOC; therefore, "the date of filing with [another agency] is the date of filing with the EEOC for purposes of the statute of limitations").

[5] Notably, the Plaintiff in Strusman also filed his initial complaint with the New York State Division of Human Rights, whereas the instant administrative complaint was filed in the NYCCHR.

Specifically, the court in <u>Strusman</u> misconstrues the plain language of the NYCHRL which states that when a complainant annuls his NYCCHR complaint, it is "as if no such complaint had been filed." <u>See</u> Admin. Code § 8-502(b).  If the drafters of the NYCHRL merely intended to provide a complainant the ability to pursue his or her claims in court after having elected his or her remedy to do so before the NYCCHR, the statute would not have been so written.

In <u>Strusman</u>, the court relied on a provision in Admin. Code § 8-502(e), which specified instances in which no tolling would apply, to mean that tolling does not apply anywhere else. However, like § 8-502(b), § 8-502(e) merely provides another instance in which no tolling applies. Thus, giving the required effect to the statutory text[6] "as if no such complaint had been filed" permits the proper conclusion that a complainant who acts to annul his election of remedies may proceed to federal court, but subject to the applicable statute of limitations as if a complaint had never been filed with the NYCCHR such that tolling applied.

Tellingly, no other court has adopted the reasoning in <u>Strusman</u>, which stands out as an aberration, while numerous courts have found no tolling applies once a complaint is dismissed for administrative convenience.  <u>See</u> <u>Jackson v. City of New York</u>, No. 10-CIV.-7889 (RMB), 2013 WL 541510, at *5 (S.D.N.Y. Feb. 14, 2013) (dismissing NYCHRL claims as barred by election of remedies despite withdrawal from NYSDHR for administrative convenience); <u>see</u> <u>also</u> <u>Moodie v. Fed. Reserve Bank of N.Y.</u>, 58 F.3d 879, 882 (2d Cir. 1995) (holding that under both the NYSHRL and the NYCHRL, "the remedies of administrative review through the [SDHR and CCHR] or judicial review are mutually exclusive") (emphasis in original).[7]

_____

[6] <u>See</u> <u>United States v. Dauray</u>, 215 F.3d 257, 260 (2d Cir. 2000) (holding that examining the plain meaning of a statute requires courts to give effect to the plain meaning of each word in the statute).

[7] "Once a complainant elects the administrative forum by filing a complaint with the [SDHR or CCHR], a subsequent judicial action on the same complaint is generally barred." <u>Id.</u> at 883
(continued...)

The holdings in Sprott, Henderson, and the subsequent cases citing and adopting their reasoning should similarly apply here.  Applying the statute here, there is no question that, while Plaintiff annulled his election of remedies by obtaining a dismissal for administrative convenience at his request, his NYCHRL claims are subject to the three (3) year statute of limitations flowing from the date he filed his complaint on May 24, 2021.  Accordingly, because no alleged discrimination is alleged on or after May 24, 2018 (going back three (3) years from the date Plaintiff commenced this case), the complaint must be dismissed as time barred.  In any event, as set forth further below, the complaint nonetheless fails to state a claim upon which relief can be granted.  As such, an entirely independent basis exists for this court to dismiss the complaint.

**THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF IN ANY EVENT**

i.     Title VII Standard for Pleading

"To defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  An adverse employment action is "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment." See Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 43 (2d Cir. 2019).

_____

(emphasis in original); accord McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 157 (2d Cir. 2017) ("If the district court then determined that [the plaintiff] had previously filed a complaint with the relevant state or city agencies, any such NYSHRL and NYCHRL claims would be dismissed under election of remedies principles").

The adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." See Vega, 801 F.3d at 85 (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).   Still, a plaintiff must plausibly allege that her protected characteristic was causally linked to the adverse employment action. "Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." See Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).

 ii. Plaintiff's Decision to Resign does not Constitute an Adverse Employment Action[8]

Here, Plaintiff alleges that he was forced to quit and was constructively discharged when Robert engaged in a racially motivated attack against him on September 4, 2016 after not receiving any assurances that he would not have to work with Robert in the future.   However, Plaintiff's resignation cannot serve as the basis for any adverse employment action as it fails to meet the high standard needed to establish a constructive discharge.

In order to adequately plead constructive discharge, a plaintiff must plausibly allege that the employer "deliberately created working conditions so intolerable, difficult, or unpleasant that a reasonable person would have felt compelled to resign." See Tulino v. Ali, No. 15-CIV.-7106, 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019) (quoting Short v. Deutsche Bank Sec., Inc., 913 N.Y.S. 2d 64, 66 (1st Dept. 2010) (emphasis added)).   A plaintiff must allege that Defendants' treatment rose to the level of intolerability. See La Porta v. Alacra, Inc., 142 A.D. 3d 851, 852-53 (1st Dept. 2016).

---

[8] The standard for a constructive discharge claim under the NYCHRL "is similar to the federal … standard." See Gonzalez v. N.Y.C. Health & Hosp. Corp., No. 19 Civ. 2645 (JPO), 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019) (dismissing constructive discharge claims under federal law, the NYSHRL, and the NYCHRL).

Crucially, the plaintiff must show that a reasonable person would have "had no alternative but to resign." See Spence v. Maryland Cas. Co., 995 F.2d 1147, 1157 (2d Cir. 1993) (emphasis added) (finding no constructive discharge because plaintiff could have lodged complaint to human resources rather than resigning). Indeed, intolerability requires an even higher threshold than a claim of a hostile work environment. See Gaffney v. City of New York, 101 A.D. 3d 410, 411 (1st Dept. 2012).

Here, Plaintiff's complaint woefully fails to allege facts necessary to establish a constructive discharge. Plaintiff alleges that Robert engaged in a racial tirade against him on September 4, 2016 after which Robert was suspended following Plaintiff's complaint. While Robert's alleged conduct was terrible and morally repugnant, it does not (even coupled with Vacca's prior comments and other allegations raised by Plaintiff in the complaint) rise to the level of intolerability such that Plaintiff "had no alternative but to resign." See Spence, *supra*.

Plaintiff worked at Russo's for over a year and there are no allegations in the complaint that any similar (or even remotely similar) incidents ever occurred before. Nor are there any allegations that any similar incident happened *after* September 4, 2016. In fact, the complaint alleges that Plaintiff was placed back on his schedule on September 6, 2016 and worked without incident until late September when Plaintiff decided on his own to resign from his position. So it appears that what is alleged to have occurred on September 4, 2016 was an isolated incident – an unfortunate, inexcusable one – but nevertheless, an isolated incident.

Further, Plaintiff alleges that he requested not to work with Robert in the future but never received any assurances. However, there are no allegations that Plaintiff even worked with Robert after September 4, 2016. So although Plaintiff may not have received any assurances about working with Robert (which was his main concern), he in fact never worked with Robert again.

15

Thus, the reality is that Plaintiff's concern had been alleviated.  Crucially, the complaint alleges that Robert travelled to Europe and was suspended by Russo's.  While the complaint alleges that Robert returned to work at Russo's without specifying when,[9] there are no allegations of any further incidents between them.

Plaintiff fails to meet the exacting element required to establish entitlement to plead a constructive discharge – that a reasonable person would have "had no alternative but to resign." See Spence, supra.   Plaintiff's request was that he not work with Robert had been remedied and he had no reason to quit in late September.  Here, Plaintiff had numerous alternatives short of resignation.  He could have: (i) continued to work and see if his request not to work with Robert would be honored by Russo's; (ii) continued to work and see if any further incidents with Robert occurred; (iii) asked to be transferred to Vetro instead of continuing to work at Russo's where Robert worked; (iv) asked that Robert be transferred to Vetro; (v) sought a restraining order against Robert; (v) asked for a leave of absence – paid or unpaid – until he received some assurance that he would not have to work with Robert; or (vi) asked for Robert to be terminated.  Plaintiff did not give Russo's any chance for these options to play out and took matters into his own hands by resigning.  By engaging in self-help, Plaintiff failed to allow Russo's to take any remedial steps to alleviate Plaintiff's concerns.  The futility of Plaintiff's argument that he was constructively discharged is all the more apparent when considering that Plaintiff concedes he was placed back to work following the incident demonstrating Russo's interest in retaining Plaintiff as an employee. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000) (finding no constructive discharge where the defendant "demonstrated an interest in retaining the plaintiffs");

---

[9] As set forth supra, discovery would show that Robert's suspension was subsequently converted into a termination and he stopped working at Russo's.  However, he did return to Russo's as a new hire in May 2018.

see also Benette v. Cinemark U.S.A., Inc., 295 F. Supp. 2d 243, 257 (W.D.N.Y. 2003) ("Evidence that an employer wanted an employee to remain in its employ seriously undermines a claim of constructive discharge").

Notably, Plaintiff resigned in late September after the September 4, 2016 incident. Clearly, Plaintiff worked for several weeks at Russo's thereafter without incident and nonetheless quit. Moreover, while Plaintiff complains that nothing was being done about his complaint, the allegations in his pleadings refute that representation. Indeed, Plaintiff concedes that Robert was suspended following the incident, and Plaintiff has no real knowledge as to what, if anything, Russo's was doing as a result of the complaint. The alleged silence from Russo's does not serve as a basis for Plaintiff to quit in any event, as – again – there are no allegations that Plaintiff was ever required to work Robert following the September 4, 2016 incident.

Plaintiff's conduct simply does not meet the heavy burden of establishing a constructive discharge. See Spence v. Md. Cas. Co., 995 F.2d 1147, 1149-54 (2d Cir. 1993) (no constructive discharge where employer repeatedly criticized plaintiff's work performance, "harangued" plaintiff in front of others, and repeatedly threatened to fire plaintiff); Martin v. Citibank, N.A., 762 F.2d 212, 221 (2d Cir. 1985) (no constructive discharge when plaintiff had difficult relationship with supervisor); Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004) (finding no constructive discharge, despite eight-year hostile work environment, because employee had endured that harassment and employer's actions immediately preceding resignation had not "ratcheted" the harassment up to "the breaking point"); Woodcock v. Montefiore Med. Ctr. Univ. Hosp., No. 98-CIV.-4420, 2002 WL 403601 (E.D.N.Y. Jan 28, 2002) (finding no constructive discharge where plaintiff resigned months after most of the incidents upon which the constructive discharge claim was premised).

17

   iii. Defendants' Other Alleged Actions are Insufficient & Immaterial to Constitute Adverse Employment Actions[10]

  Plaintiff also alleges that he: (i) received less than his fair share of tips on one (1) occasion following a racial remark made against him; and (ii) was sent home early despite arriving to work before other white employees who were not sent home.

  However, neither allegation serves as a basis to constitute sufficiently material adverse changes in the terms and conditions of employment to serve as an adverse employment action under the law. See Rowe v. Jagdamba, Inc., 302 Fed. Appx. 59, 62 (2d Cir. 2008) (summary order) ("Rowe alleges isolated incidents of adverse treatment in scheduling and table assignments, and resulting loss of tips and wages, but his allegations do not rise to the level of a 'materially adverse change in the terms and conditions' of his employment"); see also Shukla v. Deloitte Consulting LLP, No. 19-CIV.-10578, 2020 WL 3181785, at *6 (S.D.N.Y. June 15, 2020) (observing that assignments to certain job duties or work assignments "typically do not rise to the level of an adverse employment action, unless such [assignments are] ... so significant as to constitute a setback to the plaintiff's career").

---

[10] To the extent that the Court will analyze the sufficiency of the NYCHRL claims, a plaintiff must allege that "[he] [was] treated 'less well' ... because of a discriminatory intent" under that statute See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (citing Williams v. N.Y.C. Hous. Auth., 872 N.Y.S. 2d 27, 39 (2009)). Because this standard is more liberal than the corresponding federal and state law standards, courts must analyze NYCHRL claims "separately and independently from any federal and state law claims." See Mihalik, 715 F.3d at 109 (citations omitted).  However, Mihalik cautioned that "district courts must be mindful that the NYCHRL is not a 'general civility code.'" See 715 F.3d at 110 (quoting Williams, 872 N.Y.S. 2d at 40-41). Defendants "can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" Id. at 111 (quoting Williams, 872 N.Y.S. 2d at 41).  Even under this standard, the plaintiff must allege "that the conduct is caused by a discriminatory motive." See Mihalik, 715 F.3d at 110.  "It is not enough" for a plaintiff to allege that [he] "has an overbearing or obnoxious boss. [He] must [allege] that [he] has been treated less well at least in part 'because of [his race].'" Id. (quoting Williams, 872 N.Y.S. 2d at 39, 40 n. 27)).

Further, inasmuch as Plaintiff alleges a tip sharing arrangement, Defendants did not control how much Plaintiff received.  See 12 NYCRR § 146-2.14(f) ("Employers may not require directly tipped employees to contribute a greater percentage of their tips to indirectly tipped employees through tip sharing or tip pooling than is customary and reasonable").  Accordingly, these claims of discrimination as they relate to tips and schedules must be dismissed.

      iv.    References to the Plaintiff by the N-word do not Constitute a Hostile Work Environment

Plaintiff also alleges that he was called the N-word by Vacca and Robert, although he alleges that Robert called him by the N-word "multiple times" on September 4, 2016.  These allegations are insufficient to constitute a hostile work environment.  "In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014).

In general, the actions taken by the defendant "must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

While the use of a racist epithet is certainly evidence of racial discrimination, courts have found that infrequent comments, such as in the case here, do not satisfy the objective proof requirement of a hostile work environment claim necessary to constitute an adverse employment action. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated

incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments") (internal quotations and citations omitted)); <u>see</u> <u>also</u> <u>Stembridge v. City of New York</u>, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (holding seven instances over three years does not constitute a work environment permeated with racial hostility); <u>Carter v. Cornell Univ.</u>, 976 F. Supp. 224, 232 (S.D.N.Y.1997) (six comments over a number of years not hostile work environment); <u>Hill v. Rayboy-Brauestein</u>, 467 F. Supp. 2d 336, 360-61 (S.D.N.Y. 2006) (finding self-serving statements by plaintiff unsupported by any evidence and denied by defendants insufficient to create hostile work environment).

Just like in the foregoing cases, Plaintiff's complaint fails to allege that there was a steady barrage of opprobrious racial comments. Crucially, Plaintiff fails to allege *when* Vacca purportedly called him the N-word, opting instead to simply allege Vacca did so "multiple times a week."

This is insufficient to establish a hostile work environment claim. Similarly, with respect to Robert, Plaintiff only alleges that he was called the N-word by him on one day – September 4, 2016. These allegations of episodic uses of a racial slur are insufficient to be actionable.

Accordingly, Plaintiff's Title VII and NYCHRL claims must be dismissed for failure to state a claim. <u>See</u> <u>Hughes v. Twenty-First Century Fox, Inc.</u>, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (holding that even under the NYCHRL's less demanding standard, a plaintiff still must establish that there was a causal connection between protected activity and the employer's action).

**SCANDALOUS, IMPERTINENT, AND IMMATERIAL ALLEGATIONS MUST BE STRICKEN**

The Court must also strike allegations which are superfluous and unnecessary given the requirement of a short and plain statement as to why a plaintiff is entitled to relief.

Plaintiff inappropriately alleges in his complaint that: (i) he was chased by a group of ten white boys with knives and sticks when he was sixteen (16) years old near a Chinese restaurant in Howard Beach (See Compl. at ¶ 42); (ii) Howard Beach, Queens is stained with a history of hate crimes, including the murder of an African-American man in 1985 and the attack of three African-American men in 2005 (Id. at ¶ 43); (iii) Defendants have close ties to the New York City Police Department and are connected to organized crime, citing a news article (Id. at ¶ 44, 44 n. 2); (iv) guests played Trump rallies on television screens at Russo's (Id. at ¶ 31); and (v)Plaintiff would frequently be stopped by the police during his walk to work at Russo's (Id. at ¶ 45).

Rule 12 provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. See Fed. R. Civ. P. 12(f). In fact, a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." See Hill v. Cray Research, Inc., 864 F. Supp. 1070, 1073 (D.N.M. 1991); see also Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009). "To be impertinent or immaterial, the allegations must have no possible bearing on the controversy." See Employers Ins. of Wausau v. Musick, Peeler, & Garrett, 871 F. Supp. 381, 391 (S.D. Cal. 1994). Evidentiary allegations are not usually proper pleading, but allegations supplying background or historical material or other matter of an evidentiary nature will be stricken if unduly prejudicial to defendant. See Fuchs Sugars & Syrups, Inc. v. Amstar Corp., 402 F. Supp. 636, 637-38 (S.D.N.Y. 1975).

Allegations will be stricken as scandalous if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court. See Nault's Auto. Sales v. Am. Honda Motor Co., 148 F.R.D. 25, 30 (D.N.H. 1993) (citation omitted). Motions to strike are granted or denied in the court's discretion. See The Wilderness Soc'y v. Kane County, Utah, 581 F.3d 1198, 1226, n. 25 (10th Cir. 2009).

Here, allegations of murders and beatings that occurred decades ago in 1985 and 2005 do not pertain in any way to whether Defendants discriminated against Plaintiff.   Allegations related to those elements – within the relevant statute of limitations period of May 24, 2018 through May 24, 2021 – are the only allegations that should be plead in the complaint.  Because there is no allegation that any Defendant in this case was involved in the foregoing events in 1985 and 2005, the allegations are impertinent, immaterial, and must be stricken.

Moreover, the allegation in conclusory fashion that Russo's is connected to organized crime is inherently scandalous and have no bearing on whether Plaintiff's claims have any merit. Plaintiff, who complains of race discrimination in this case, has engaged in the very discriminatory stereotyping that he complains of by imputing criminal conduct upon Defendants.   In fact, Plaintiff is abusing his litigation privilege in making these allegations.  See United States Sec. and Exch. Commn. v Collector's Coffee Inc., No. 19-CIV.-4355 (VM) (GWG), 2021 WL 1956369, at *4 (S.D.N.Y. May 17, 2021), report and recommendation adopted, 19-CIV.-4355 (VM), 2021 WL 3082209 (S.D.N.Y. July 21, 2021) (holding that while the "litigation privilege" doctrine has been used as a defense to state law tort claims, several courts have declined to apply state law privileges to federal causes of action).

Accordingly, this Court should strike these allegations.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court issue an Order granting this motion to dismiss the complaint, strike the scandalous, immaterial, and impertinent allegations from the Complaint, together with such other and further relief as this honorable Court deems just, equitable, and proper.

Dated:  Lake Success, New York
       October 15, 2021

                                      **MILMAN LABUDA LAW GROUP PLLC**

                                      By:   /s   Emanuel Kataev, Esq._____
                                      Joseph M. Labuda, Esq.
                                      Emanuel Kataev, Esq.
                                      3000 Marcus Avenue, Suite 3W8
                                      Lake Success, NY 11042-1073
                                      (516) 328-8899 (office)
                                      (516) 328-0082 (facsimile)
                                      joe@mllaborlaw.com
                                      emanuel@mllaborlaw.com

                                      *Attorneys for Defendants*